UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ARZOU HAMI,

                         Plaintiff,

  -v-                                  9:21-CV-1224

CHENANGO COUNTY; CHENANGO
COUNTY SHERIFF'S OFFICE;
CHENANGO COUNTY SHERIFF
ERNEST CUTTING, JR.; LIEUTENANT
CHRISTOPHER S. MILES; DEPUTY
ROBERT SICKMOND; DEPUTY JOHN
GREGWARE; DEPUTY DAVID
BURDICK; DEPUTY PEASE; and
JOHN DOES 1-10,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SPICER LAW OFFICE<br>Attorneys for Plaintiff<br>121 East Water Street, Suite 100<br>Syracuse, New York 13202 | LEWIS G. SPICER, ESQ. |
| COUGHLIN, GERHART LAW FIRM<br>Attorneys for Defendants<br>P.O. Box 2039<br>99 Corporate Drive<br>Binghamton, New York 13902 | PAUL J. SWEENEY, ESQ. |

DAVID N. HURD
United States District Judge

# AMENDED MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On November 10, 2021, plaintiff Arzou Hami ("Hami" or "plaintiff") filed a complaint alleging civil rights violations under 42 U.S.C. § 1983 ("§ 1983") and New York Human Rights Law § 296 (the "Human Rights Law").  She levies those claims against Chenango County ("Chenango"), its Sheriff's Office (the "Sheriff's Office"), Sheriff Ernest Cutting, Jr. (together the "municipal defendants"), and various Sheriff's Office employees, including: Lieutenant Christopher S. Miles ("Miles"), Deputy Robert Sickmond ("Sickmond"), Deputy John Gregware, Deputy David Burdick, Deputy Pease, and unnamed defendants John Does 1-10 (together the "individual defendants" and with the municipal defendants "defendants").

Generally, Hami complains of medical and hygienic neglect as well as physical abuse during a three-month stint in a jail run by the Sheriff's Office (the "jail") between November of 2018 and February of 2019.  On January 21, 2022, defendants moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.  That motion, having been fully briefed, will now be decided on the parties' submissions and without oral argument.

## II. **BACKGROUND**

On November 11, 2018, Hami arrived at the jail as an inmate.[1] Dkt. 1 ("Compl."), ¶ 28. Plaintiff alleges that she suffers from Bipolar I disorder, which, when left untreated, builds to psychotic episodes. *Id.* ¶ 29. According to plaintiff, defendants were aware of her condition and the resulting need for treatment at the time she arrived at the jail. *Id.* ¶ 31. Specifically, she claims that she told defendants that she had been diagnosed with bipolar disorder, schizophrenia, and multiple personality disorder. *Id.* ¶ 32. She similarly claims that a mental health examination had been requested at her arraignment. *Id.* ¶ 33.

The day Hami arrived at the jail, she was visited by a forensic social worker. Compl. ¶ 34. During that visit, plaintiff claims that she exhibited clear signs of an adverse psychological episode. *Id.* Nevertheless, the social worker apparently only recommended that plaintiff receive standard supervision. *Id.* The social worker also did not order any further evaluation. *Id.*

According to Hami, she began having noticeable psychotic episodes that same day. Compl. ¶ 35. Despite her rapid downward turn, it took until November 20, 2018 for another social worker to come visit her. *Id.* However,

---

[1] The facts are taken from plaintiff's complaint and read in the light most favorable to her, as is appropriate for a motion to dismiss.

plaintiff's worsening condition apparently made it impossible for her to participate with the visiting therapist. *Id.* ¶ 36.

Hami alleges that the rest of her time in the jail consisted of a constant stream of abuses. First, she claims that on November 29, 2018, she was handcuffed, taken to a holding cell, and subjected to "aggressive and violent discipline, harassment, violent restraints[,] and beatings." Compl. ¶¶ 37-38. Second, she alleges that she was placed in solitary confinement, which contributed to her psychological decompensation and drove her to self-harm. *Id.* ¶¶ 39-40.

Third, she claims that she was routinely "denied food and water, . . . strapped into a restraint chair, beat[en], pepper spray[ed], . . . thrown on . . . the ground, . . . thrown onto a bench[,]" and subjected to "other physical attacks." Compl. ¶ 41. In fact, she alleges that she was denied water for "several weeks," to the point where she found herself needing to drink out of the toilet to survive. *Id.* ¶ 43. Fourth, plaintiff alleges that she was required to use a horse brush to clean herself when she showered. *Id.* ¶ 44.

Hami claims that these abuses contributed to her psychological deterioration, causing her mental and emotional distress, sores on her body, and injuries from self-harm. Compl. ¶ 46. In addition, she claims that she suffered a fractured kneecap, shoulder blades, other compression fractures,

and required emergency gallbladder surgery because of defendants' treatment of her. *Id.* ¶ 48. According to plaintiff, she endured these injuries frequently—if not constantly—from the time she found herself in the jail until she left defendants' custody on February 19, 2019. *See id.* ¶ 28.

On November 10, 2021, Hami filed her complaint in this district. Dkt. 1. Plaintiff's complaint states seven causes of action: (I) deprivation of federal civil rights under § 1983; (II) excessive force in violation of the Fourteenth Amendment of the Constitution under § 1983; (III) deliberate indifference to safety and medical needs in violation of the Fourteenth Amendment under § 1983; (IV) deliberate indifference to physical harm in violation of the Fourteenth Amendment under § 1983; (V) municipal § 1983 liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (VI) failure to intervene under § 1983; and (VII) disability discrimination under the Human Rights Law. On January 21, 2022, defendants moved to dismiss the complaint in its entirety. Dkt. 8. This decision now follows.

## III. LEGAL STANDARDS

Defendants' motion to dismiss comes under two Rules, and thus two distinct legal standards govern the present motion practice.

### A. Rule 12(b)(1) Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional

power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings." *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) (citing *Makarova*, 201 F.3d at 113). "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Id.* at 138 (citations omitted).

## B. Rule 12(b)(6) Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That factual matter may be drawn from "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Importantly, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Chambers v. Time Warner,*

6

*Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). If the complaint and its additional materials—when viewed through that pro-plaintiff lens—are not enough to raise the plaintiff's right to relief above the speculative level, the complaint must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. DISCUSSION

Defendants raise three arguments in favor of dismissing Hami's complaint: (1) plaintiff failed to file a notice of claim as is required to state a claim under the Human Rights Law, which divests this Court of jurisdiction over that claim; (2) plaintiff failed to allege personal involvement for any of the individual defendants; and (3) plaintiff has failed to plausibly allege liability for the municipal defendants under *Monell*.

### A. Plaintiff's NYSHRL Claims

As a rule, "[s]tate claims brought under state law in federal court are subject to state procedural rules." *Henneberger v. Cnty. of Nassau*, 465 F. Supp. 2d 176, 197 (E.D.N.Y. 2006) (citing *Felder v. Casey*, 487 U.S. 131, 141 (1988)). And under New York General Municipal Law § 50-e ("§ 50-e"), filing a notice of claim with a municipality within ninety days after that claim accrues is typically a condition precedent to bringing suit against that municipality. N.Y. GEN. MUN. LAW § 50-e(1)(a). This requirement is construed strictly. *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999).

7

But whether a claim triggers the notice requirement is not quite so straightforward as it seems. That is because in *Margerum v. City of Buffalo*, New York's Court of Appeals held that § 50-e, standing alone, does not require a plaintiff under the Human Rights Law to file a notice of claim. 28 N.E.3d 515, 518-19 (N.Y. 2015). The logic goes that General Municipal Law § 50 itself only imposes the notice requirement on claims addressing "personal injury, wrongful death, or damage to personal property." *Id.* at 519. Human Rights Law claims address none of those, so the Court of Appeals held that they do not trigger the general notice of claim requirement imposed by § 50-e.

Hami acknowledges that she never filed a notice of claim with Chenango. Instead, she claims that because of *Margerum* she did not need to. Plaintiff is mistaken.

After all, Hami states her claim against Chenango, a county, while *Margerum*'s defendant was a city. Though that distinction may seem inconsequential, in practice it is determinative. County defendants are further protected by New York County Law § 52 ("County Law § 52"), which extends the notice of claim requirement to all claims "for damage, injury or death, *or for invasion of personal or property rights*, of every name and nature . . . ." *Russell v. Westchester Cmty. Coll.*, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017) (citing N.Y. COUNTY LAW § 52).

8

Countless courts have held that County Law § 52 applies the same notice of claim requirement imposed on a limited subset of claims under the General Municipal Law to *all* claims against a county. *See, e.g.*, *Russell*, 2017 WL 4326545, at \*5-7.  This Court sees no reason to depart from that practice.  Hami has therefore failed to meet the jurisdictional notice of claim requirements imposed by County Law § 52.  Those requirements are necessary predicates for her Human Rights Law claim, and without proof of a timely notice of claim, plaintiff's state law claims cannot survive.  *See, e.g.*, *Melendez v. Cnty. of Westchester*, 2019 WL 297519, at \*2 (S.D.N.Y. Jan. 23, 2019) (dismissing Human Rights Law claim for failure to comply with notice requirements imposed by County Law § 52).

Anticipating this possible outcome, Hami has asked this Court to grant her the opportunity to file a late notice of claim.  Unfortunately for her, under New York law, this Court "lacks jurisdiction to grant a request to file a late notice of claim if more than one year and ninety days has passed since the accrual of the claim." *Pilitz v. Inc. Vill. of Rockville Ctr.*, 634 F. Supp. 2d 317, 318 (E.D.N.Y. 2009).

Hami alleges that she was confined in the jail from November 11, 2018 to February 19, 2019.  Compl. ¶ 28.  In other words, nearly three years passed from the date plaintiff was released—and her cause of action accrued—to the date she filed her complaint on November 10, 2021.  Dkt. 1.  As a result, this

Court cannot grant her the opportunity to file a late notice of claim, and her Human Rights Law claim must be dismissed. *Pilitz*, 634 F. Supp. 2d at 318.

## B. **Personal Involvement**

Having disposed of Hami's state law claims, the Court turns next to her § 1983 claims. To recover under § 1983, a plaintiff is obliged to establish that the state actor defendant was personally involved in depriving her of her civil rights. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Historically speaking, drawing the line between when a supervisor can be said to be personally involved with a constitutional deprivation has proven somewhat difficult.

To help clarify matters, the Second Circuit in *Colon v. Coughlin* laid out five types of evidence that could suggest supervisory liability under § 1983: (1) direct participation; (2) failure to remedy a wrong brought to his or her attention; (3) creation or perpetuation of a policy or custom that resulted in the unconstitutional practice; (4) gross negligence in supervising subordinates who committed the unconstitutional acts; or (5) deliberate indifference by failing to act on information indicating that unconstitutional acts were taking place. 58 F.3d 865, 873 (2d Cir. 1995).

But the Supreme Court's decision in *Ashcroft v. Iqbal* had long left *Colon* on thin ice. 556 U.S. 662, 676 (2009) (holding that vicarious liability is inapplicable in § 1983 suit). In 2020, the Second Circuit finally reconciled the

two decisions, and held that "there is no special rule for supervisory liability" under § 1983. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, a supervisor's liability must be established through the same test that applies to any other state employee. *Id.* at 619. In short, that means that a supervisor cannot be held liable for mere deliberate indifference to a constitutional violation by his subordinates, "unless that is the same state of mind required for the constitutional deprivation [the plaintiff] alleges." *See id.* at 618 (citing *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted)).

Given Hami's approach of presenting the Court with broad allegations of misconduct over an extended period of time against all defendants, her complaint can essentially be distilled down to two § 1983 claims: (1) excessive force; and (2) deliberate indifference to safety and medical needs, both under the Fourteenth Amendment.

For the first, a Fourteenth Amendment excessive force claim brought by a pretrial detainee must be supported by proof that "the force purposely or knowingly used against h[er] was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). That standard differs from the more common Eighth Amendment variant of an excessive force claim, because unlike an incarcerated plaintiff, a pretrial plaintiff does not need to prove any subjective intent on the part of the defendant. *See id.*

11

But Hami must nevertheless allege that any of the individual defendants "purposely or knowingly" used force against her. She does not. Instead, her broad strokes method of pleading does not attach a single name to any of the instances of force she describes. *See* Compl. ¶¶ 37-38, 41. She claims only that "the defendants" used force on her, without ever specifying which, when, or why any one defendant used force. *See id.* Plausibility demands those details from her, and thus she has failed to allege personal involvement for any of the individual defendants. Plaintiff's claims of excessive force and failure to intervene must be dismissed for each individual defendant. *See, e.g., Carlisle v. Jefferson Cnty.*, 2022 WL 806992, at *7 (N.D.N.Y. Mar. 17, 2022) (recommending dismissal of claims of excessive force against individual defendants because of plaintiff's failure to allege personal involvement).

But Hami's deliberate indifference claims are not quite so straightforward. To state a claim for deliberate indifference under the Fourteenth Amendment, a pretrial detainee must allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017).

12

Upon review, Hami has successfully alleged a claim of deliberate indifference against each individual defendant. On Miles's part, plaintiff alleges that he is responsible for supervising the jail, training its officers, and safeguarding the inmates. Compl. ¶¶ 15-16. Plaintiff similarly alleges that Sickmond, a sergeant, was also responsible for overseeing inmates at the jail. *Id.* ¶ 19. She alleges the same for every other individual defendant except for the Doe defendants. *Id.* ¶¶ 20-22. For their part, she claims that the Doe defendants were directly responsible for causing the conditions of which she complains. *Id.* ¶ 23.

In other words, Hami claims that every named individual defendant was a supervisor responsible for ensuring that the inmates were properly cared for or else directly interacted with the inmates. Compl. ¶¶ 15-23. By extension, she alleges that she was subjected to extensive psychological, physical, and hygienic neglect under their watch during her time at the jail and despite their knowledge of her poor psychological condition. Compl. ¶¶ 31-44.

Reading the complaint in the light most favorable to Hami, the individual defendants' allegedly subjecting her to the conditions she describes would require either knowledge or else recklessness, given the high rank and responsibility she ascribes to them or else the direct involvement of the Does. *Darnell*, 849 F.3d at 35. By extension, and even though plaintiff's allegations against the individual defendants stem from their supervisory roles, she has

13

nevertheless alleged deliberate indifference on their part, as § 1983 requires of her. *Tangreti*, 983 F.3d at 618. Defendant's motion to dismiss plaintiff's deliberate indifference claims against the individual defendants must therefore be denied.[2]

### C. Monell Liability

Finally, the Court is left to consider Hami's claims against the municipal defendants. To that end, the general rule is that municipalities cannot be held liable under § 1983. *Monell*, 436 U.S. at 694-95. The only exception is when the facts supporting the § 1983 claim stem from a municipal policy, custom, or practice. *Id.* at 694.

There are four ways of establishing a policy or practice suitable to holding a municipality liable: (1) proving a formal policy; (2) proving that the municipality's policymaking official caused the constitutional deprivation; (3) proving a practice that is consistent and widespread enough "to have the force of law" as a tacit custom; and (4) proving a wholesale failure to provide adequate training and supervision to subordinates amounting to deliberate

---

[2] That plaintiff's deliberate indifference claims survive against the unnamed defendants while her excessive force claims did not is owed to the different mental states at play for each claim. Plaintiff has failed to claim that any individual Doe defendant knowingly or purposely used excessive force on her. *Kingsley*, 576 U.S. at 396-97. However, the apparent insufficiency of the conditions plaintiff alleges—which will be discussed more fully below—suffice to establish that an officer working with inmates at the jail acted with deliberate indifference to the jail's conditions. *Darnell*, 849 F.3d at 35.

indifference to the rights of citizens. *Dixon v. City of Syracuse*, 493 F. Supp. 3d 30, 36-37 (N.D.N.Y. 2020).

Whichever of the four paths to municipal liability a plaintiff chooses, she must demonstrate that the policy—whether overt or covert—caused the injury of which she complains. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). In the usual case, a single incident involving actors below the policymaking level of authority will not suffice to establish municipal liability. *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998). Instead, to ascribe the actions of subordinate employees to policymakers, a plaintiff must allege a discriminatory practice which is "so manifest as to imply the constructive acquiescence of senior policy[ ]making officials." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992).

The municipal defendants object that Hami has failed to allege a *Monell* claim sufficient to rope them into liability for the alleged misconduct of the individual defendants. And to be sure, the Court has certainly seen stronger *Monell* claims. Nevertheless, upon review, plaintiff has carried her burden at this early stage.

Hami has alleged ongoing and constant abuses for a three-month period. Compl. ¶ 2. Those claimed abuses included beatings and applications of pepper spray. *Id.* ¶ 41. Further, not all of the violations plaintiff claims were of a sort that could easily be concealed or explained away; plaintiff's claim

15

that the water to her cell was turned off for weeks is precisely the sort of manifest deprivation that speaks to constructive acquiescence. *Id.* ¶ 43; *Sorlucco*, 971 F. 2d at 871. Plaintiff's claim that she was ordered to have a mental health exam yet had her mental health needs go unmet should similarly have been apparent to policymakers. Compl. ¶¶ 31-36.

Put together, the duration and substance of Hami's claimed deprivations—especially read in the light most favorable to her—suffice to plausibly allege a manifest deprivation such that Chenango and its Sheriff can fairly be held liable for those deprivations. *Sorlucco*, 971 F. 2d at 871. All the more so considering the inherent difficulty for plaintiffs in alleging *Monell* claims against municipalities before they have the opportunity to conduct discovery into the practices of local government defendants. *Dixon*, 493 F. Supp. 3d at 38 (citing *Kimbrough v. Town of Dewitt Police Dep't*, 2010 WL 3724017, at *6 (N.D.N.Y. Sept. 15, 2010) for proposition that "it is hard to fathom how a plaintiff could provide more detail at the pleading stage . . . without allowing h[er] discovery" (cleaned up)). That discovery may prove to be fruitless, but until and unless it does, plaintiff's *Monell* claim must survive.[3]

---

[3] Although plaintiff's allegations of excessive force and deliberate indifference against the municipal defendants were adequately alleged, of course a failure to intervene claim is "impossible . . . to assert" against a municipal defendant. *Gomez v. City of N.Y.*, 2016 WL 5115499, at *5 (S.D.N.Y. Sept. 16, 2016). That claim must be dismissed as to the municipal defendants.

16

## V. **CONCLUSION**

In many ways, this case is the mirror image of a typical § 1983 claim brought against both individual defendants and a municipality. More often than not, the usual case involves a plaintiff claiming that she was subjected to unconstitutional misconduct by state employees in a single, discrete instance and hopes to find her way into discovery to prove that hers was not an exceptional case, but rather a symptom of broad municipal misconduct inviting a *Monell* claim.

By contrast, Hami claims broad-brush misconduct over an extended period. Those allegations have painted a picture of municipal wrongdoing, but said precious little about any individual officer's conduct except as a supervisor. Accordingly, plaintiff's claims against the individual officers for excessive force must be dismissed. Her *Monell* claims and her deliberate indifference claims against the individual officers, however, must remain.

Only two matters remain to be resolved. First, Count I of Hami's complaint states a cause of action for "deprivation of federal civil rights" under § 1983. There is no such claim in the absence of a designated federal right, and plaintiff appears not to defend this count as a separate cause of action. Instead, she treats it as an umbrella under which her other claims are sheltered. Count I is thus duplicative of plaintiff's other § 1983 claims, was never defended when attacked, and must be dismissed for failure to state

17


a claim.  *See Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (summary order) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.").

Second, Count IV of Hami's complaint attempts to state a claim for deliberate indifference to physical harm.  Plaintiff similarly fails to defend that claim, it is similarly duplicative of her deliberate indifference to physical harm claim, and it must be dismissed as well.  *Colbert*, 824 F. App'x at 11.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. Plaintiff Arzou Hami's Count VII claims under the New York State Human Rights Law are DISMISSED against all defendants for a lack of subject matter jurisdiction;

3. Plaintiff Arzou Hami's claims under Count (I) for Deprivation of Federal Civil Rights; under Count (IV) for Deliberate Indifference to Physical Harm; and under Count (VI) for Failure to Intervene are DISMISSED against all defendants for failure to state a claim;

4. Plaintiff Arzou Hami's claims under Count II for excessive force are DISMISSED against defendants Lieutenant Christopher S. Miles,

a claim.  *See Colbert v. Rio Tinto PLC*, 824 F. App'x 5, 11 (2d Cir. 2020) (summary order) ("As a general matter, district courts frequently deem claims abandoned when counseled plaintiffs fail to provide arguments in opposition at the motion to dismiss stage.").

Second, Count IV of Hami's complaint attempts to state a claim for deliberate indifference to physical harm.  Plaintiff similarly fails to defend that claim, it is similarly duplicative of her deliberate indifference to physical harm claim, and it must be dismissed as well.  *Colbert*, 824 F. App'x at 11.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. Plaintiff Arzou Hami's Count VII claims under the New York State Human Rights Law are DISMISSED against all defendants for a lack of subject matter jurisdiction;

3. Plaintiff Arzou Hami's claims under Count (I) for Deprivation of Federal Civil Rights; under Count (IV) for Deliberate Indifference to Physical Harm; and under Count (VI) for Failure to Intervene are DISMISSED against all defendants for failure to state a claim;

4. Plaintiff Arzou Hami's claims under Count II for excessive force are DISMISSED against defendants Lieutenant Christopher S. Miles,

   Deputy Robert Sickmond, Deputy John Gregware, Deputy David Burdick, Deputy Pease, and John Does 1-10;

5. Plaintiff Arzou Hami's claims under Count (II) for excessive force against defendants Chenango County, Chenango County Sheriff's Office, and Chenango County Sheriff Ernest Cutting, Jr.; under Count (III) for deliberate indifference to safety and medical needs against all defendants; and under Count (V) for municipal liability under *Monell* remain; and

6. Defendants are ordered to answer the remaining counts of plaintiff Arzou Hami's complaint on or before April 19, 2022.

   IT IS SO ORDERED.

Dated: April 4, 2022
       Utica, New York.

_____
David N. Hurd
U.S. District Judge